**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ISAAC WASHINGTON,

     Plaintiff,

v.                                 Case No. 8:25-cv-2898-TPB-CPT

PNC BANK, NATIONAL ASSOCIATION,
and THE PNC FINANCIAL
SERVICES GROUP, INC.,

     Defendants.

_____/

## ORDER GRANTING IN PART "DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT"

This matter is before the Court on "Defendants' Motion to Dismiss the Third Amended Complaint and Incorporated Memorandum of Law," filed on June 1, 2026. (Doc. 71). On June 15, 2026, Plaintiff Isaac Washington, proceeding *pro se*, filed a response in opposition. (Doc. 73). Plaintiff Jerald C. Jackson did not file a response. Upon review of the motion, response, case file, and record, the Court finds as follows:

This case arises from a hold on a deposited check and a subsequent account freeze. According to the allegations of the third amended complaint, Isaac Washington is a joint owner of a PNC checking account with Jerald C. Jackson. Washington deposited a check made payable to Jackson in the amount of $1,750,144.27 into the PNC account on October 2, 2025. On October 3, 2025, PNC issued a hold notice. Washington claims that the United States Treasury Department confirmed that the check was verified and paid to PNC, but PNC made no portion of the funds available to Washington. Washington asserts that he filed complaints with various

governmental agencies and entities, including the Consumer Financial Protection Bureau.  Since the pendency of this case, the full $1,750,144.27 has been released to Jackson.

In his third amended complaint, Plaintiffs bring multiple federal, state, and common law claims against Defendants PNC Bank, N.A. and PNC Financial Services Group, Inc. related to Defendants' alleged misconduct in placing the hold, freezing the account, and placing the funds in an internal suspense account to allow for an investigation.

### Count I – Violation of the EFAA and Regulation CC

Defendant argues that Count I should be dismissed because Defendants were permitted to place an exception hold on the check, and any subsequent account-level hold does not constitute a violation of the EFAA or Regulation CC.  "The EFAA was enacted to accelerate the availability of funds to bank depositors and to improve the Nation's check payment system by requiring banks to make deposited funds available for withdrawal within specified periods of time."  *Houman v. Lewis*, No. 09-82271-CIV, 2010 WL 2331089, at \*2 (S.D. Fla. June 10, 2010) (citing 12 U.S.C. §§ 4001–4010; *Bank One Chicago, N.A. v. Midwest Bank and Trust Co.*, 516 U.S. 264, 266 (1996)).  Regulation CC, which was promulgated under the EFAA, explains when funds must be made available, but it provides an exception when a bank has "reasonable cause to doubt collectability."  *See* 12 C.F.R. § 229.10–13.  § 4010 of the EFAA provides for civil liability of EFAA violations.

In this case, Plaintiffs allege that PNC placed a hold on the check based on § 229.13(e) and provided notice of that hold on October 3rd.  The check hold was

removed on October 6th, within three business days.  Therefore, it appears that the allegations of the third amended complaint demonstrate an exception hold and no violation of either the EFAA or Regulation CC.

But Plaintiffs appear to complain that PNC "bypassed" and violated the EFAA and Regulation CC by imposing an account-level restraint after the hold was removed. Although it does not appear that any Florida state or federal court has been presented with this issue, other federal courts have held that a bank removing a check hold and subsequently placing an account-level hold does not violate the EFAA and Regulation CC.  *See Little Donkey Enters. Washington, Inc. v. U.S. Bancorp*, 136 F. App'x 91, 92 (9th Cir. 2005) ("Merely placing a hold on or freezing funds in an account after the deposits have been made available is not a violation of the Funds Act and thus does not support a claim for civil liability under 12 U.S.C. § 4010."); *Machinski v. Ally Bank*, No. 2:25-CV-00292-AMA-CMR, 2026 WL 476295, at *4-5 (D. Utah Feb. 2, 2026), *report and recommendation adopted*, No. 2:25-CV-00292-AMA-CMR, 2026 WL 473849 (D. Utah Feb. 19, 2026) (collecting cases and holding "[a]s multiple courts have held . . . a later account freeze, occurring after a deposit, does not qualify as a 'deposit hold' and cannot retroactively convert a completed deposit into a violation of Regulation CC."); *Gaskin v. BMO Harris Bank NA*, No. CV-23-01919-PHX-SMB, 2024 WL 1961843, at *3 (D. Ariz. May 3, 2024) ("[T]he EFAA does not prohibit account freezes resulting from suspicious activity, and a bank is not liable under the EFAA for freezing an account."); *Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 587 (D. Md. 2016) (same).  The Court finds these cases persuasive.

As such, Plaintiffs have failed to state a claim in Count I for violation of the EFAA or Regulation CC.  Although Defendants seek dismissal of this count with prejudice, in light of Plaintiffs' *pro se* status, the Court will permit leave to amend, if Plaintiffs may do so in good faith.

### Count II – Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants argue that Count II – asserting claims for both breach of contract and breach of the implied covenant of good faith and fair dealing – should be dismissed for failure to state a claim because the claims are contradicted by the account agreement.

As an initial matter, the Court finds *sua sponte* that the combination of these claims in one count constitutes a shotgun pleading.  A shotgun pleading is one where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" and the defendant therefore cannot be "expected to frame a responsive pleading." *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996).  The Eleventh Circuit has identified four primary types of shotgun pleadings:

(1)    complaints containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;

(2)    complaints that do not commit the mortal sin of re-alleging all preceding counts but are guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;

(3)    complaints that commit the sin of not separating into a different count each cause of action or claim for relief; and

(4)     complaints that assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which actions or omissions, or which of the defendants the claim is brought against.

*See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).  Plaintiffs violate the third prong by improperly combining different causes of action into one count.

As to the breach of contract claim, it appears undisputed that there is an account agreement between the parties.  Plaintiffs reference the account agreement in their third amended complaint, and the agreement is central to Plaintiffs' claims. Plaintiffs appear to claim that PNC breached the account agreement by depriving Washington of control over the account, relying on review and delay concepts, using broad agreement language to justify an internal suspense-transfer and detain the funds, and closing the account without transparent remittance or a final accounting.

But these claims appear to be foreclosed by the agreement itself.  The agreement expressly provides that PNC may, without prior notice, place a hold on an account if it is notified of a dispute regarding funds or if the funds may have bene obtained through fraudulent or criminal acts.  The agreement also states that all deposits and credits are subject to review for compliance with applicable law, which may result in delays in posting such deposits or credits or the refusal to accept all or part of the deposit.  The agreement even provides that longer delays may apply where PNC believes a check deposited will not be paid.  And finally, the agreement provides that either the account holder or the bank can close the account at any time, for any reason, without advance notice.

The actions complained of – placing the check hold, freezing the account, and closing the account – therefore do not appear to constitute breaches of the agreement and in fact appear to be explicitly authorized by the agreement.  And the agreement provides no requirement that PNC use certain language to justify the internal suspense transfer and continued retention, or that PNC was obligated to provide a transparent remittance or final accounting.  Consequently, Plaintiffs fail to state a claim for breach of contract.  Although Defendants seek dismissal of this claim with prejudice, in light of Plaintiffs' *pro se* status, the Court will grant leave to amend, if Plaintiffs may do so in good faith.

As to the covenant of good faith and fair dealing, the covenant is implied in every contract and "designed to protect the parties' reasonable contractual obligations."  *Heyward v. Wells Fargo Bank, NA*, No. 8:20-cv-572-T-33AAS, 2020 WL 10353829, at *3 (M.D. Fla. Oct. 6, 2020) (quoting *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005)).  To allege a breach of the implied covenant, a plaintiff must identify a breach of an express contractual provision.  Here, because Plaintiffs have failed to adequately identify a breach of an express contractual provision of the account agreement for the reasons discussed above, Plaintiffs' claim for breach of the implied covenant likewise fails.  Although Defendants seek dismissal with prejudice, in an abundance of caution, and in light of Plaintiffs' *pro se* status, the Court will grant leave to amend, if Plaintiffs may do so in good faith.

*Count III – Declaratory Judgment and Equitable Accounting*

Defendants seek dismissal of Count III because there is no substantial controversy warranting declaratory relief, and because an equitable accounting is not a substitute for discovery.

The Court *sua sponte* finds that Count III constitutes a shotgun pleading because it improperly combines claims for declaratory relief and equitable accounting. This is improper for the reasons explained above.

As to the declaratory relief claim, declaratory judgment "is not a cause of action; it is a remedy." *Burke v. Johnson*, No. 6:16-cv-199-Orl-41TBS, 2016 WL 9503732, at *3 (M.D. Fla. June 27, 2016); *see also* 28 U.S.C. § 2201 (titled "Creation of remedy"); *Foley v. Orange Cty.*, No. 6:12-cv-269-Orl-37KRS, 2012 WL 6021459, at *8 (M.D. Fla. Dec. 4, 2012) ("[The Declaratory Judgment Act] does not provide an independent cause of action or theory of recovery."); *Feingold v. Budner*, No. 9:08-cv-80539-DTKH, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008) ("Declaratory judgments and injunctions are equitable remedies, not causes of action.").

Moreover, even if declaratory judgment could be asserted as a cause of action, the claim would be insufficient as pleaded.  "[T]he federal Declaratory Judgment Act empowers a district court to enter a judgment 'declaring the rights and other legal relations of any interested party' only in 'a case of actual controversy within its jurisdiction,' regardless of whether 'further relief is or could be sought.'"  *Sheriff of Broward Cty. v. Evanston Ins. Co.*, 159 F.4th 792, 803 (11th Cir. 2025) (citation modified) (quoting 28 U.S.C. § 2201(a)).  The "actual controversy" requirement for declaratory relief "echoes Article III's standing requirement."  *Id.* (citation modified)

(quoting *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019)).

Here, Washington asserts that an actual controversy exists "concerning whether Defendants had lawful authority to continue detaining the verified Treasury proceeds" and "concerning Defendants' own records and conduct including the present and historical status, custody, control, transfer path, remittance status, clearance status, and final disposition of the verified Treasury proceeds." Upon review, this is insufficient to demonstrate an actual controversy – whether Defendants had the authority to "detain" the check concerns alleged past harm and not future injury (particularly where the check hold has since been released and Jackson has received the funds). For these reasons, the declaratory judgment claim in Count III is dismissed, without leave to amend.

Considering the claim for limited accounting, a party seeking an equitable accounting under Florida law "must show the existence of a fiduciary relationship or a complex transaction and must demonstrate the inadequacy of the legal remedy." *Heyward*, 2020 WL 10353829, at *9 (quoting *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1300 (S.D. Fla. 2017)). Here, Plaintiffs fail to allege any fiduciary relationship, complex transaction, or inadequate legal remedy. As pleaded, the equitable accounting appears to be a substitute for discovery, which is improper. And in light of the fact that the proceeds have now been released to Jackson, it is unclear why an accounting would be necessary or even helpful. As such, the motion is granted as to these grounds. In an abundance of caution, and in light of

Plaintiffs' *pro se* status, this portion of Count III is dismissed without prejudice, with leave to amend, if Plaintiffs may do so in good faith.

*Count IV – Interference with Contract*

Defendants seek dismissal of Count IV for failure to state a claim.  42 U.S.C. § 1981 provides that all persons have the right to make and enforce contracts.  "To state a claim under § 1981 for interference with a right to contract, 'a plaintiff must identify an impaired contractual relationship under which the plaintiff has rights.'"  *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1309 (11th Cir. 2010) (quoting *Kinnon v. Arcoub, Gopman & Assocs.*, 490 F.3d 886, 890 (11th Cir. 2007)).  A plaintiff must also allege "(1) intentional racial discrimination (2) that caused a contractual injury."  *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021) (citations omitted).

As to intentional racial discrimination, a plaintiff may allege racial discrimination directly or circumstantially.  *Id.* (citing *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008)).  To allege direct racial discrimination, "a plaintiff must allege the overt invocation of race by the alleged discriminator. . ." – such as "the use of a racial slur or racially charged language."  *Id.* (citing *Kinnon*, 490 F.3d at 891).  To allege discrimination through circumstantial evidence, a plaintiff "must point to comparators of a different race who were 'similarly situated in all material respects' and were not subject to the same mistreatment."  *Id.* (quoting *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1229 (11th Cir. 2019)).  A plaintiff must also allege that race was a but-for cause of his injury.  *Id.* at 1297.

Plaintiffs do not appear to allege direct racial discrimination as they do not identify any overt invocation of race by Defendants.  Therefore, to sustain a claim for

indirect racial discrimination based on circumstantial evidence, Plaintiffs must allege sufficient facts to show that non-minority bank customers were treated more favorably in nearly identical circumstances – conclusory and generalized allegations of disparate treatment are simply not enough. *See Pullins v. Hancock Whitney Bank*, 512 F. Supp. 3d 647, 652, 663 (M.D. La. 2021). Plaintiffs fail to sufficiently allege indirect racial discrimination in this case. Specifically, Plaintiffs fail to allege sufficient facts that show non-minority bank customers were treated more favorably in nearly identical circumstances.

Plaintiffs must also provide sufficient factual allegations to show that a contractual relationship was impaired as a result of any alleged discrimination. But Plaintiffs do not identify any contractual provision of the account agreement impaired or modified by Defendants. Based on the language of the account agreement, it seems unlikely that Plaintiffs will be able to set forth sufficient allegations.

The motion to dismiss is therefore granted as to these grounds. But in an abundance of caution, and in light of Plaintiffs' *pro se* status, the Court will grant leave to amend.

### *Count V – Retaliation*

To state a § 1981 retaliation claim, a plaintiff must allege "that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1176 (11th Cir. 2016) (quoting *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). Protected activity must "involve the assertion of rights encompassed by the statute." *Id.* (quoting *Jimenez*, 596 F.3d at 1311).

Plaintiffs factually allege that Washington objected to the check hold and account restrictions – these are not rights protected by the statute.  And Plaintiffs do not allege that Washington communicated his belief that discrimination was occurring.  Plaintiffs have therefore failed to adequately allege that Washington engaged in statutorily protected activity.  Moreover, because Plaintiffs have not sufficiently alleged the first prong, they also fail to sufficiently allege a causal connection between any statutorily protected activity and a materially adverse action.  The motion is therefore granted as to these grounds.  In an abundance of caution, and in light of Plaintiffs' *pro se* status, the Court will grant leave to amend.

### *Count VI – Violation of the Florida Deceptive and Unfair Trade Practices Act*

Defendants argue that Plaintiffs' FDUTPA claim fails because FDUTPA does not apply to Defendants as PNC is a nationally chartered bank.  The Court agrees as to Defendant PNC Bank, N.A.  "FDUTPA does not apply to banks and savings and loan associations regulated by the state or the federal government." *Bankers Tr. Co. v. Basciano*, 960 So. 2d 773, 778 (Fla. 5th DCA 2007) (explaining that FDUTPA does not apply to banks regulated by federal agencies); *see* § 501.212(4), *F.S.*  PNC Bank, N.A. is a nationally chartered bank and is federally regulated.  Consequently, Plaintiffs have not and cannot state any FDUTPA claim against PNC Bank, N.A.  Count VI is dismissed with prejudice as to PNC Bank, N.A., without leave to amend.

Washington argues that this FDUTPA exclusion should not apply to Defendant PNC Financial Services Group, Inc.  It appears that PNC Financial Services Group, Inc. may be a bank holding company, although that is not clear from either the third amended complaint or the motion to dismiss.  Although Defendants have included a

Page 11 of 13

footnote in prior filings – including the pending motion to dismiss – that PNC Financial Services Group, Inc. is not a proper party to this action, this argument has not been developed at all.  In an abundance of caution, the Court will permit Plaintiffs to refile their FDUTPA claim against PNC Financial Services Group, Inc., if they may do so in good faith.  Should Plaintiffs do so, Defendants may certainly raise any arguments related to either outright dismissal of PNC Financial Services Group, Inc. as an improper party or dismissal of the FDUTPA claim against PNC Financial Services Group, Inc. pursuant to the FDUTPA exclusion related to banks or any other exclusions.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendants' Motion to Dismiss the Third Amended Complaint and Incorporated Memorandum of Law" (Doc. 71) is **GRANTED IN PART**, as set forth herein.

(2) Counts I, II, III (in part), IV, V, and VI (in part) of the third amended complaint are **DISMISSED WITHOUT PREJUDICE**, with leave to amend.

(3) Counts III (in part) and VI (in part) of the third amended complaint are **DISMISSED WITH PREJUDICE**, without leave to amend.

(4) On or before July 13, 2026, Plaintiffs are directed to file a fourth amended complaint to cure the defects identified in this Order, if they may do so in good faith.  Failure to file an amended complaint consistent with this Order will

result in this Order becoming a final judgment.  **Any amended complaint should be hand-signed by each of the *pro se* Plaintiffs.**[1]

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>29th</u> day of June, 2026.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE

---

[1] **Plaintiffs are reminded that any filings – such as a fourth amended complaint – must be signed by Jackson's attorney of record, or by Jackson personally if he is unrepresented.  *See* Fed. R. Civ. P. 11(a).  The fourth amended complaint must also state the addresses, e-mail addresses, and telephone numbers of all signers (including both Plaintiff and Jackson).**